IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOHN CARLYLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:24-cv-02226-JPM |
| | ) |
| STRYKER EMPLOYMENT | ) |
| COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment, filed by Defendant Stryker Employment Company, LLC ("Defendant" or "Stryker") on March 26, 2025. (ECF No. 40.) Also before the Court is Plaintiff John Carlyle's ("Plaintiff's" or "Carlyle's") Response in Opposition,[1] filed on April 25, 2025.[2] (ECF No. 48.) Defendant argues Plaintiff has failed to present a prima facie case that Defendant terminated his employment because of his age such that Defendant is entitled to summary judgment. (See ECF No. 40-1 at PageID 172.)

For the reasons set forth below, the Court **DENIES** Defendant's Motion.

---

[1] The document filed at ECF No. 48 and titled "Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Additional Facts" is in fact Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment. (See ECF No. 48 at PageID 336.) Thus, the Court references it as such in this Order.
[2] Upon Plaintiff's motion, the Court granted Plaintiff an extension to respond to Defendant's Motion for Summary Judgment. (ECF No. 47.)

I.      **BACKGROUND**

This is an action for wrongful termination based on age discrimination under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (1967), ("ADEA") and the Tennessee Human Rights Act, T.C.A. § 4-21-401 et seq. ("THRA"). (ECF No. 1 ¶ 1.)

A.      **Undisputed Facts**

Defendant is a Michigan limited liability company engaged in the "design, manufacture, and marketing of orthopedic medical devices and biologic products for upper and lower extremity repair and reconstruction." (ECF No. 10 ¶ 3.)

Plaintiff was hired by Wright Medical, a company later acquired by Defendant, on February 22, 2014. (ECF No. 1 ¶ 13; ECF No. 10 ¶ 13.) Defendant employed Plaintiff as the Senior Manager of Maintenance at the Stryker facility located at 11576 Memphis-Arlington Road, Arlington, Tennessee (the "Arlington facility"). (See ECF No. 48-1 at PageID 351.)

At the time of Plaintiff's termination, he reported to Edward Kilgallen ("Kilgallen"), Senior Director of Operations. (Id. at PageID 351.) During the relevant time period, "Plaintiff was within the protected class of age, i.e., 40 years old or more." (Id. at PageID 352.)

The Arlington facility runs a Preventive Maintenance ("PM") program, which "establish[es] periodic preventive maintenance for each piece of equipment to ensure that the equipment is functioning properly." (Id.) The PM program helps "avoid issues that could impact the product manufactured at" the Arlington facility. (See id.) "When there is a failure in the process, involving preventive maintenance or otherwise," the quality team investigates any consequent potential impact to the product in the field. (Id.)

Part of Plaintiff's responsibilities as Senior Manager of Maintenance was managing PM reports at the Arlington facility. (Id.) This included "ensuring that [Plaintiff] and his team were

completing the PM reports in accordance with the program and schedule."  (Id.; see also ECF No. 1 ¶ 15; ECF No. 10 ¶ 15.)  Plaintiff also ensured that the PM reports were entered into Defendant's PM system.  (ECF No. 48-1 at PageID 353.)[3]  Before entering a PM report into the system, Plaintiff confirmed it contained a date and signature.  (See id.)  On occasion, Plaintiff made necessary corrections to the reports before entering them.  (Id. (citing Pl. Dep., ECF No. 48-3, at 90:19–91:3.)  "Plaintiff was the only employee with access to the system where the PM reports were digitally recorded and stored."  (Id.)

The Arlington facility maintains a standard operating procedure for its PM program titled "LE Preventive Maintenance (PM) Program, Doc #CORP-SOP-0060, Revision C" (the "PM SOP").  (Id. at PageID 353–54.)  Plaintiff had ownership of and responsibility for the PM SOP, including submitting any necessary changes thereto.  (Id. at PageID 354.)  Under the PM SOP, the process for generation of PM reports is as follows: The PM report is first generated by the PM System, then distributed to the responsible person.  (ECF No. 48-1 at PageID 354.)  The responsible person performs the PM report, which is then returned to Maintenance.  (Id.)  If the PM report is "complete," Maintenance "verif[ies]" and enters the PM report into the system.  (Id.)  If, however, the PM report is incomplete, Maintenance returns it to the responsible person to perform again.  (See id.)

On or about March 23, 2023, management at the Arlington facility discovered a compliance issue related to the Ultrasonic Tank Cavitation Energy Clean Line ("Miraclean") machine involving potential falsification of documents.  (See id. at PageID 353–54; ECF No. 1 ¶ 19.)

---

[3] It is disputed what content Plaintiff was expected to review and verify before entering the PM reports into the system.  (See ECF No. 48-1 at PageID 353.)

3

William Post ("Post"), Senior Manager of Quality Assurance, and his team conducted a preliminary investigation into the malfunctioning of the Miraclean machine, beginning with a review of the machine's PM records. (ECF No. 48-1 at PageID 355.)

During the investigation, Post discovered that the Miraclean machine's PM records contained multiple issues dating back to 2019. (Id.) There were three major categories of issues identified. (Id. at PageID 355–56.) First, some PM reports "were visibly incorrectly completed," yet marked as complete and "passing." (See id. at PageID 356.) In this category, the required math was done incorrectly; for example, some PM reports provided the sum of the relevant figures instead of the required average. (Id.) Second, some PM reports marked complete and passing by Plaintiff were blank, indicating no preventive maintenance work had been performed. (Id.) Third, some PM reports were missing altogether. (Id.) It is unclear from the record how many reports were affected. (See, e.g., ECF No. 48 at PageID 337 (characterizing the issue as a "small number of deficient [PM reports] for a single machine").)

Post became concerned that Plaintiff had marked PM reports with issues as complete in the system and reported that issue to Yolonda Rockett ("Rockett"), Associate Manager in Human Resources. (See ECF No. 48-1 at PageID 357.) Rockett passed along the issue to Meghan LaBardi ("LaBardi"), Senior Compliance Manager. (Id.)

LaBardi's investigation "focused on business ethics and particularly whether anyone involved participated in unethical behavior." (Id.) As part of her investigation, LaBardi "interviewed a number of [Stryker] employees, including Christopher Williams, David Delancey, Wendy Cohen, . . . Post, and Plaintiff." (Id. at PageID 358.) LaBardi's investigation found that Plaintiff "did not feel that it was his responsibility to review maintenance records and claimed if it was given to him, it must be done." (Id. (quoting ECF No. 42-5 (Investigation Rep.)).)

On April 26, 2023, LaBardi met with Kilgallen and Rockett to discuss her investigation and next steps regarding Plaintiff.  (ECF No. 48-1 at PageID 358.)  Ultimately, Kilgallen decided to terminate Plaintiff for Plaintiff's lack of accountability for his failure to verify the PM reports.  (See id. at PageID 358–59.)  LaBardi was the sole individual responsible for preparing the compliance investigation report that preceded Plaintiff's termination.  (ECF No. 19 at PageID 57.)  The report reflects LaBardi's investigation conclusion and Defendant's termination decision:

> [Plaintiff] did not fulfill the requirements of his job and … this has been occurring repeatedly over the last four years.  Based on the lack of accountability and the extent to which the negligence occurred, the decision was made by [Defendant] to terminate [Plaintiff's] employment.

(ECF No. 48-1 at PageID 359 (quoting ECF No. 42-5 (Investigation Rep.)).)  Defendant terminated Plaintiff's employment on May 22, 2023, in a meeting with Kilgallen, Plaintiff, and Human Resources.  (See id. at PageID 359–60.)

"Plaintiff did not complain of age discrimination during his employment with Stryker." (Id. at PageID 361.)  Stryker maintained an antidiscrimination policy prohibiting workplace discrimination on the basis of age or any other legally protected characteristic at all times relevant to this matter.  (Id.)

**B.   Procedural Background**

Plaintiff filed his Complaint on April 10, 2024.  (ECF No. 1.)  Defendant filed its Answer on May 20, 2024.  (ECF No. 10.)  A jury trial was set for May 19, 2025.  (See ECF No. 19.)

Defendant filed the instant Motion for Summary Judgment on March 26, 2025.  (ECF No. 40; see also ECF Nos. 41 (Statement of Undisputed Material Facts & Exhs.), 42 (Exhs. Under Seal).)  Plaintiff filed his Response in Opposition on April 25, 2025.  (ECF No. 48; see also ECF Nos. 49 (Exh. Under Seal), 50 (Exh. Under Seal).)

5

The Parties appeared before the Court for a Pretrial Conference on May 12, 2025. (ECF No. 64.) The Court heard arguments regarding Defendant's Motion and reset the trial for June 16, 2025.

## II. LEGAL STANDARD

### A. Summary Judgment

A moving party is entitled to summary judgment "if [it] shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). First, the "moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If satisfied, the burden then shifts to the non-moving party to "set forth specific facts showing a triable issue of material fact." Id. at 448–49; see also Fed. R. Civ. P. 56(e). If the non-moving party fails to show as much, "the moving part[y is] entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted). The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson

v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).  "Credibility determinations" and "the weighing of evidence" require submission to a fact-finder.  See Anderson, 477 U.S. at 255.

To show whether a fact is genuinely disputed, a party must "cit[e] to particular parts of materials in the record," "show[] that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact."  Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also L.R. 56.1(b)(3).  The Court must consider the cited materials and may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court, however, need not "search the entire record to establish that it is bereft of a genuine issue of material fact."  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (internal citations omitted).  The non-moving party must present enough affirmative evidence to support a reasonable jury's verdict in its favor.  Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (citing Liberty Lobby, 477 U.S. at 251).

**B.      Age Discrimination**

The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  The Court applies the same analysis to ADEA and THRA claims.  See Bender v. Hecht's Dep't Stores, 455 F.3d 612, 620 (6th Cir. 2006).

To make a prima facie case for age discrimination, a plaintiff must show (1) he is at least 40 years old and thus a member of a protected group; (2) he was qualified for the job in question; (3) his employer took an adverse employment action against him; and (4) there are "circumstances that support an inference of discrimination."  See Blizzard, 698 F.3d at 283 (quoting Swierkiewicz

v. Sorema N.A., 534 U.S. 506, 510 (2002)); Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003).

"To defeat a motion for summary judgment in a discrimination case, a plaintiff must [provide] either direct or circumstantial evidence of discrimination." Barrett v. Whirlpool Corp., 556 F.3d 502, 514 (6th Cir. 2009). When the plaintiff relies on circumstantial evidence of discrimination, the Court applies the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Barrett, 556 F.3d at 515. Under the McDonnell Douglas framework, the plaintiff carries the initial burden of presenting a prima facie case of age discrimination. See Blizzard v. Marion Tech. Coll., 698 F.3d 275, 283 (citing 411 U.S. at 802). If met, the burden then shifts to the defendant to produce "some legitimate, nondiscriminatory reason" for the adverse employment action. See id. (quoting McDonnell Douglas, 411 U.S. at 802). If met, the burden returns to the plaintiff to show that the proffered reason is pretextual. Id. The plaintiff maintains the ultimate burden of proving by a preponderance of the evidence the defendant's intent to discriminate. Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)).

### III.  ANALYSIS

As the movant for summary judgment, Defendant bears the burden of showing (1) a lack of genuine dispute of material fact, and then (2) its entitlement to judgment as a matter of law. See Mosholder, 679 F.3d at 448. Plaintiff's age discrimination claim depends on circumstantial evidence, (see ECF Nos. 1, 48), and thus is subject to the McDonnell Douglas test for determination of Defendant's entitlement to judgment as a matter of law. See Barrett, 556 F.3d at 515. The material facts at issue here relate to Plaintiff's burdens under the McDonnell Douglas test, namely his prima facie case and Defendant's proffered reason for his termination. See 411

8

U.S. at 802. Therefore, Defendant must show that there is no genuine dispute as to the material facts of the case before the Court may apply the McDonnell Douglas test to the merits of Plaintiff's case. See Mosholder, 679 F.3d at 448; Barrett, 556 F.3d at 515.

To consider Defendant's entitlement to judgment as a matter of law, the Court must be in the position where it does not have to make factual inferences best left for a jury. See Johnson, 777 F.3d at 843; Anderson, 477 U.S. at 255. That is, any reasonable weighing of the facts by the Court would necessitate a denial of summary judgment. See id.

### A. Genuine Dispute of Material Fact

A material fact is one that, if proven, "would establish or refute an essential element of the cause of action or defense." Bruederle, 687 F.3d at 776.

It is undisputed that Plaintiff was over 40 years old during the relevant periods of this action, thus making him a member of the protected group for an age discrimination case. (See ECF No. 41 ¶ 3; ECF No. 48-1 at PageID 352; ECF No. 40-1 at PageID 173); Grosjean, 349 F.3d at 335. It is also undisputed that Defendant fired Plaintiff, which constitutes an adverse employment action. (See ECF No. 41 ¶ 30.) Additionally, it is undisputed that Defendant fired Plaintiff due in part to Plaintiff's purported "lack of accountability for his failure to verify the PM reports." (See ECF No. 48-1 at PageID 358–59.) Thus, the first and third elements of Plaintiff's prima facie case are not in dispute. See Blizzard, 698 F.3d at 283.

The material facts relevant to the Court's analysis relate to the second and fourth elements of Plaintiff's prima facie case: Plaintiff's qualifications and Plaintiff's age as a factor in his termination. (See ECF No. 40-1 at PageID 174–75); Blizzard, 698 F.3d at 283. Defendant argues "the undisputed facts show that Plaintiff was terminated for his misconduct—not his age." (ECF No. 40-1 at PageID 172.)

For the Court to determine whether Defendant is entitled to summary judgment as a matter of law, it must first determine whether there is a lack of genuine dispute of material fact as to the two contested elements. See Bruederle, 687 F.3d at 776; Fed. R. Civ. P. 56(a).

### i. *Plaintiff's Qualifications*

Defendant argues that Plaintiff was not qualified for the position of Senior Manager of Maintenance due to Plaintiff's failure to adhere to the PM SOP. (ECF No. 40-1 at PageID 175–76.) Plaintiff's alleged errors include his failure "to verify completion of the PM reports before marking them as complete in the system," and his purported failure to "accept any accountability" during the ethics investigation. Id. In support, Defendant emphasizes the problems with the PM reports for the Miraclean machine over the four-year period under investigation. (Id. at PageID 176–77.)

Plaintiff points to his nine years at Stryker and prior decades of experience in the industry as proof of his qualifications. (See ECF No. 48 at PageID 336; ECF No. 48-1 ¶¶ 1–2.) Plaintiff also highlights his yearly performance reviews at Stryker, in which his managers found he met or exceeded expectations. (See ECF No. 48 at PageID 341; ECF No. 48-1 ¶ 4.) Additionally, Plaintiff argues there are no definitions for the terms "verify" and "complete" in the PM SOP. (ECF No. 48 at PageID 343–44.)\

Defendant also argues Plaintiff's purported lack of accountability during the investigation and at the termination meeting proves his lack of qualifications for the position. (See ECF No. 40-1 at PageID 176 (suggesting the lack of accountability was "more important[]" than the erroneous PM reports), 178.) Plaintiff disputes the relevance of his purported continued denial of accountability in Defendant's determination of his qualifications. (See ECF No. 48-1 at PageID 359–60.) Plaintiff argues Kilgallen's decision to terminate Plaintiff before the final one-on-one

meeting makes Plaintiff's comments and perceived attitude about accountability at that time irrelevant to Defendant's justification for his termination here. (See ECF No. 48-1 at PageID 359–60 (citing Kilgallen Dep, Exh. A, 148:24–149:13).)

A key conflict between the Parties' positions is the understanding of Plaintiff's duties regarding the PM reports. Specifically, the Parties dispute the meaning of the terms "complete" and "verify" in the PM SOP and the subsequent expectations of Plaintiff in performing his duties. (See ECF No. 48-1 at 353 (disputing the review requirements to mark a report "complete"); ECF No. 40-1 at PageID 177; No. 48 at PageID 343–44.) Per the PM Generation flowchart in the PM SOP, Plaintiff needed to determine if a PM report was "complete" after being "performed by the responsible person." (See ECF No. 41-5 at PageID 244.) If the report was complete, Plaintiff would then "verif[y] and enter[] it into [the] computer." (Id.) Defendant's position equates "complete" and "correctly completed," (see ECF No. 41 ¶ 18), which functionally conflates "verify" and "complete" under Plaintiff's duties in PM generation. Plaintiff counters that his responsibilities in the flow of PM generation did not include the detailed review for accuracy proposed by Defendant. (See ECF No. 48 at PageID 341, 343; ECF No. 48-1 at PageID 358.)

The Court finds there is a genuine dispute of material fact as to Plaintiff's qualifications based on the dispute over Plaintiff's duties as presented in the record. The meaning of the terms "complete" and "verify" are ambiguous given the PM generation process reflected in the PM SOP and the Parties' contrasting arguments. (See ECF No. 41-5 at PageID 244; see also ECF No. 41 ¶ 18; ECF No. 48 at PageID 341, 343; ECF No. 48-1 at 353.) To decide between the Parties' contrasting interpretations of the terms and subsequent expectations of Plaintiff's duties, the Court would find itself in the position to weigh Plaintiff's credibility as to his understanding as the owner of the PM SOP against Defendant's different understanding. This is inappropriate at the summary

11

judgment stage. See Anderson, 477 U.S. at 255. After construing the facts in Plaintiff's favor as the non-movant, see Robertson, 753 F.3d at 614, there is a genuine factual dispute as to Plaintiff's exact job duties regarding the PM reports and knowledge thereof. See Fed. R. Civ. P. 56(a). Accordingly, there is a genuine dispute as to the material facts regarding Plaintiff's qualifications. See id.

>           ii.   *Inference of Age Discrimination*

Defendant argues it terminated Plaintiff's employment "after an internal business ethics investigation found that [Plaintiff] failed to verify the content of [PM] reports prior to entering them in [Defendant's] system." (ECF No. 40-1 at PageID 173.) Defendant argues this verification was required by the PM SOP and part of Plaintiff's responsibilities as the "responsible owner" of the PM reports. (Id.) Arguing this is mere pretext for age discrimination, Plaintiff counters Defendant "retroactively created duties for Plaintiff that [it] claim[s] he did not fulfill" and then gave his duties in part to a "significantly younger employee." (See ECF No. 48 at 337.)

Defendant characterizes Plaintiff's testimony regarding inferences of age discrimination fueling his termination as follows: (1) Plaintiff was "supposedly the oldest employee who reported to" Kilgallen; and (2) Kilgallen "made a comment once on Plaintiff's birthday that it was [Plaintiff's] birthday and Plaintiff was turning 65 years old." (ECF No. 40-1 at PageID 174.) Defendant argues "the mere combination of circumstances that [Plaintiff] was both other 40 years old and terminated from his employment is simply not enough" to show age discrimination. (Id. at PageID 175.)

Plaintiff paints a different picture. As for the "one isolated comment," (see ECF No. 40-1 at PageID 174), Plaintiff describes that moment as pointed remarks by Kilgallen about Plaintiff's age in front of his team. (ECF No. 48 at PageID 342.) Plaintiff also points to his status as the

oldest member of Kilgallen's team and his exclusion from staff meetings with Kilgallen after the Stryker acquisition. (See ECF No. 48-1 at PageID 360–61.) Moreover, Plaintiff alleges Defendant's actions after Plaintiff's termination—the purported lack of changes to the PM system and the division of Plaintiff's job responsibilities to at least one significantly younger employee—show his age was a factor in his termination. (ECF No. 48 at PageID 341, 345.)

The Court finds there is a genuine dispute of material fact as to whether Plaintiff's age played a factor in Defendant's decision to terminate his employment. The Court weighs reasonable factual inferences in favor of Plaintiff as the non-movant. See Robertson, 753 F.3d at 606. An isolated comment from a supervisor is insufficient to support an inference of age discrimination. See Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1026 (6th Cir. 1993). Plaintiff, however, does not only allege an isolated comment about his age which a reasonable jury could find showed a certain age-based animus from his supervisor. Plaintiff also alleges disparate treatment of and replacement with significantly younger employees. First, Plaintiff alleges a significantly younger employee who submitted incorrect PM reports, Chris Williams, received training from Defendant, rather than termination. (ECF No. 48 at PageID 344; ECF No. 48-1 ¶¶ 11–12.) Second, Plaintiff alleges that Defendant gave Plaintiff's former job responsibilities to at least one significantly younger employee, even if those employees did not take up Plaintiff's former job title. (See id. at PageID 341; ECF No. 48-1 at PageID 366.) Defendant disputes all this. (See ECF No. 63 at PageID 610 (Kilgallen's comments), 612–13 (Plaintiff's replacement), 614 (changes to the PM system), 615 (Williams' treatment).) Thus, there exists a genuine dispute of material fact as to the final element of Plaintiff's prima facie case such that summary judgment for Defendant is inappropriate. See Fed. R. Civ. P. 56(a).

### B.      Entitlement to Judgment as a Matter of Law

Because Defendant has failed to show that there is a lack of genuine dispute of material facts, see supra Section III.A, Defendant cannot show that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

## IV.      CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**.

**SO ORDERED**, this 4th day of June, 2025.

                                                       */s/ Jon P. McCalla*
                                                      JON P. McCALLA
                                                      UNITED STATES DISTRICT JUDGE